IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 12-92 |
| | ) | |
| WILLIS WHEELER | ) | |

## **MOTION IN LIMINE TO PRECLUDE ADMISSION OF CERTAIN EVIDENCE OFFERED BY THE GOVERNMENT**

On April 5, 2016, counsel for the government provided counsel for Willis Wheeler with its proposed trial exhibit list. *See* Exhibit A (Government proposed exhibit list). Mr. Wheeler hereby moves to exclude certain proposed exhibits from being entered into evidence at the trial in this case. The evidence is identified below by source and number from the government's proposed Exhibit List, attached hereto as Exhibit A. Also set forth below is the particular objection Mr. Wheeler has to the various categories of evidence listed below, along with such legal argument as may be of assistance to the Court.

**1. Evidence submission forms and evidence collections forms:** ACM-1, ACM-2, DEA-1, DEA-3, DEA-5, DEA-8, DEA-10, DEA-14, DEA-16, DEA-18, DEA-20, FBI-1, FBI-180, FBI-182, and FBI-243.

These documents are hearsay and contain information in the nature of opinion and speculation. *See* Exhibit B (ACM-1, ACM-2, DEA-1, DEA-3, DEA-5, DEA-8, DEA-10, DEA-14, DEA-16, DEA-18, DEA-20, FBI-1, FBI-180, FBI-182, FBI-243). Some public documents may be admitted as a public record under Rule 803(8) of the Federal Rules of Evidence, see below. That rule provides an exception to the rule against hearsay for "a record or statement of a public office," and includes "a matter observed while under a legal duty to report, **but not including, in**

1

**a criminal case, a matter observed by law-enforcement personnel**." Thus, police reports, as a general matter, are the exception to the exception and are generally inadmissible.

With respect to the evidence collection and submission forms, they are clearly prepared with the primary intent of establishing or proving past events potentially relevant to a later criminal prosecution and are or contain matters "observed by law enforcement personnel." Moreover, most contain opinions about the nature of the supposed drug or "cut" seized and include weights that include packaging and other non-drug materials. Thus, Mr. Wheeler submits that there is no ground upon which such reports can be admitted.

An examination of ACM-1 and ACM-2 illustrate why such reports are inadmissible. These documents describe the evidence, or items submitted to the lab, "MDMA PILLS," yet the officer submitting the form had not tested the pills and was merely stating an opinion, which, itself, is inadmissible. Moreover, this report is misleading and unduly prejudicial, especially here where the pills eventually tested negative for a controlled substance. Similarly erroneous and misleading is DEA-1, which lists the approximate gross quantity of the alleged drug evidence seized as 3,661 grams. The vast majority of that weight, however, is the packaging material; the amount of heroin, as weighed by the lab, was far less than 1,000 grams. While the form describes the exhibit's packaging, this form proved confusing to whoever created the description of the government's exhibit list, which describes this exhibit as "Report of Drug Property Collected, Purchased or Seized – Heroin, 3661.00 g dated 3/2012."[1] Because the jury will need to decide whether the weight of heroin exceeded one kilogram, this misleading information is particularly dangerous and prejudicial. Thus, in addition to constituting hearsay evidence in violation of the Fed. R. Evid. 802,

---

[1] DEA-3, DEA-5, DEA-8, and DEA-10 also contain hearsay evidence about weight that is misleading and inadmissible opinion evidence. Mr. Wheeler further notes that he will object to the jury receiving an exhibit list that contains descriptions of the documents that include these inaccurate weights for the heroin.

*et seq.* and the Sixth Amendment, these documents are inadmissible under Rule 403 because their probative value is outweighed by the fact that such evidence is misleading, needlessly cumulative, confusing, and constitutes a waste of time. Further, the opinions set forth therein are not admissible under Fed. R. Evid. 701, *et. seq.*

Mr. Wheeler recognizes that sometimes a report may merely record routine and objective observations, and as such may be admissible. For instance in *United States v. Brown*, 9 F.3d 907, 911 (11th Cir. 1993), the Court held that that Rule 803(8) is not violated if "the government established that its regular and customary procedure was to fill out a property receipt for any type of evidence." In *Brown*, the Court held that it was sufficient for the police custodian to testify about how he filled out the property receipt. Similarly, *United States v. Dowdell*, 595 F.3d 50, 72 (1st Cir. 2010), held:

> The rote recitation of biographical information in a booking sheet ordinarily does not implicate the same potential perception biases that a subjective narrative of an investigation or an alleged offense might. A booking sheet does not recount the work that led to an arrest so much as the mere fact that an arrest occurred. As a result, unlike the investigative reports that lie at the heart of the law enforcement exception, booking sheets raise little concern that suspicion of guilt will function as proof of guilt.

*But see* the distinction drawn by the District Court in *United States v. Ekiyor*, 90 F.Supp.3d 735 (E.D.Mi. 2015), which held that the log of baggage transactions created by a security manager at an airport did not fall within the public or business record exception to the hearsay rule. The Court held that "[w]hile the 'Certificate of Authenticity' executed by [the security officer] states that the baggage log is a true copy of a record that was created 'at or near the time' of Defendant's September 2014 flights and kept 'in the course of [KLM's] regularly conducted business activity,' it is evident from the face of the log that it was prepared at the request of the Government for the

specific purpose of introducing it at Defendant's criminal trial. This log, after all, lists only the baggage associated with Defendant."

Thus a true "property receipt" or inventory, and even floor plans when supported by adequate foundational testimony, may be admissible as evidence; therefore, Mr. Wheeler is not objecting to the evidence offered as Exhibits FBI-2, FBI-3B, FBI-120, FBI-121, FBI-122, FBI-141, FBI-142, FBI-162, and FBI-164. (He also includes in this category the floor plan and photo logs from the Mishra searches, FBI-183, FBI-185, and FBI-244, but he is objecting to those on the ground that they refer to evidence not admissible because they involve post-arrest and post-conspiratorial facts and activity, see argument on this ground below.)

Along these lines, Mr. Wheeler objects to the "surveillance log" offered as Exhibit FBI-180, and the evidence recovery logs offered as Exhibits FBI-182 and FBI-243, because the surveillance consists of "matters observed by law enforcement" in violation of Rule 803(8) and the evidence recovery log FBI-182 includes opinions about "cutting agents" and the log FBI-243 contains only part of the entire document (pages 5-18 of 45 pages), and includes items that are not even offered in evidence (such as a "mafia photo").

**2. Laboratory and other forensic reports**: ACM-3, DEA-2, DEA-4, DEA-6, DEA-7, DEA-9, DEA-11, DEA-12, DEA-13, DEA-15, DEA-17, DEA-19, FBI-322.

With respect to the laboratory and forensic reports, they are prepared with the primary intent of establishing or proving opinions and findings relevant to a criminal prosecution, and thus constitute inadmissible hearsay in violation of the Confrontation Clause, *Crawford v. Washington*, 541 U.S. 36 (2005). In *Melendez-Diaz v. Massachusetts*, 557 U.S. 305 (2009), the government sought to admit into evidence affidavits reporting the results of forensic analysis, which purported

4

that the substance seized from the defendant was cocaine. The United States Supreme Court held that notarized forensic lab "certificates of analysis" were inadmissible at trial. The Court held that "the analysts' affidavits were testimonial statements, and the analysts were 'witnesses' for purposes of the Sixth Amendment." *Id.* at 311 (citing *Crawford v. Washington*, *supra*.) In *Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2708 (2011), the Supreme Court held that that a Blood Alcohol Analysis Report was inadmissible. The report also contained a certificate from the analyst, with his accompanying statements. *Id.* at 2710-2711. At trial, the government introduced the report as a business record. *Id.* It also introduced the report through another analyst, one who had not performed the original test. *Id.* at 2713. The Supreme Court held that the Confrontation Clause barred the prosecution from introducing a forensic lab report, containing such testimonial certification. *Id.* at 2714-15. It held that because the analyst's report and certification were testimonial, the admission of the report was contingent on the defendant's ability to cross-examine that particular analyst. *Id.*

**3. Evidence from Mishra investigation and searches in February 2013: CB-1 through CB-4, FBI-182 through FBI-264, MRSW-1 through MRSW-138A, RASW-1 through RASW-67A:**

On March 26, 2013, a Superseding Indictment was filed charging Richard Bush, Mayank Mishra, and Willis Wheeler with conspiracy to distribute heroin from August 2011 through March 2012 (Count One). Mr. Wheeler was also charged in Count Three with possession with intent to deliver 100 grams or more of heroin on March 14, 2012, and in Count Seven with the possession of a firearm by a felon on the same date (March 14, 2012), which is the date on which Mr. Bush and Mr. Wheeler were arrested. The Government has provided in its Exhibit list a multitude of

items found in Mr. Mishra's home and store in February 2013. Mr. Wheeler objects to the evidence recovered from Mr. Mishra's residence and place of business, as it is irrelevant, highly prejudicial, and offers no connection between these items and the crimes for which Mr. Wheeler stands accused.

   A. **Legal Framework**

The trial court must consider three issues when deciding whether to admit evidence of acts by co-conspirators, committed after a conspiracy has ended. First, it must decide whether the conspiracy has ended. *United States v. Armocida*, 515 F.2d 29, 47 (3d Cir. 1975). Second, the Court must determine whether the acts are relevant in determining whether the initial conspiracy existed. *Lutwak v. United States,* 344 U.S. 604, 618 (1953). If relevant, the court must then determine whether, under Rule 403, the probative value of the evidence outweighs its prejudicial effect. *See* Fed. R. Evid. 403. The court has "considerable leeway" in conducting the balancing test under Rule 403. *United States v. Sampson*, 980 F.2d 883, 886 (3d Cir. 1992).

   B. **The conspiracy terminated in 2012, one year prior to the search warrants executed for Mr. Mishra's Middle Road and Rock America properties**

The evidence of drug paraphernalia (scales, strainers, stamp bags, stamps, dilutants, dust masks, etc), suspected narcotics, firearms, ammunition, and currency recovered from Mr. Mishra one year after the arrests of Mr. Wheeler and Mr. Bush on March 14, 2012, do not fall within the scope of the conspiracy charged in the indictment. The time at which a conspiracy ends depends upon the specific circumstances of the case. *Armocida,* 515 F.2d 29 at 47 ("The time when a continuing conspiracy terminates depends upon the particular facts and purposes of the conspiracy). "Generally … a conspiracy terminates when its central criminal purposes have been attained," *Krulewitch v. United States*, 336 U.S. 440, 442-43 (1949); *see also United States v.*

*Ammar*, 714 F.2d 238, 253 (3d Cir. 1983) ("A conspiracy is presumed to continue until its objective is achieved").

In *Ammar*, the Third Circuit held that an arrest does not *necessarily* terminate the conspiracy. *Id.* at 253. In that case, a co-conspirator continued to have contact with members of the conspiracy after his incarceration. *Id.* In fact, members of the conspiracy used proceeds from their continuing illicit activities to post bail for the defendant. *Id.* Similarly, in *Armocida*, discussed *supra*, the Third Circuit held that even though three co-conspirators were incarcerated, evidence was presented that "the heroin distribution would resume upon the defendants' release on bail." *Id.* at 47. The Court, therefore, held that the conspiracy had not terminated. That is not the case here.

The government's theory in this case is that the central criminal purpose of the conspiracy charged at Count One was Mr. Bush's dealing in excess of one kilogram of heroin to various associates, who were also arrested in 2012, in the East Hills section of Pittsburgh. The government's theory was that Bush obtained heroin from Mr. Wheeler and obtained cutting agents and packaging materials from Mr. Mishra. Thereafter, Mr. Bush distributed to various associates in the East Hills section of Pittsburgh. The duration of the conspiracy does not extend after March 2012, when both Mr. Bush and Mr. Wheeler were incarcerated and had no opportunity to continue the conspiracy. S*ee United States v. Borelli,* 336 F.2d 376, 390 (2d Cir. 1964) ("The unlikelihood of other conspirators relying for further aid on a person known to be confined for the very offense in which they were engaging makes such confinement a sufficient 'affirmative act' to sustain the defense of withdrawal."). Moreover, numerous associates of Mr. Bush were arrested and charged in this case in 2012. While Mr. Mishra was not arrested until 2013, the conspiracy did not continue

throughout that time because, without Bush, his supply of heroin and his customers, the conspiracy no longer operated. Indeed, Mr. Mishra was no longer even connected with it.

The District Court's reasoning in *Alicea v. United States*, 100 F. Supp.3d 457, 463-64 (E.D. Pa 2015), which dealt with materially similar facts, is instructive here. In that case, the leader of the conspiracy, Mr. Smith, was arrested in 2007. Not all of his co-conspirators were apprehended at the time – in 2008, when a superseding indictment was filed, the Government acknowledged that the conspiracy "included, but [was] not limited to" the conspirators named therein. Superseding Indictment at 1, *United States v. Smith*, No. 2:07-cr-00737, ECF No. 231 (E.D.Pa. Aug. 6, 2008). Nevertheless, the District Court held that the conspiracy "ended with Smith's arrest." *Id.* at 463.

Similarly, in this case, Mr. Bush was arrested in 2012, along with Mr. Wheeler. The indictment clearly delineates the scope of the charged conspiracy, which ran from August 2011 through March of 2012. Accordingly, Mr. Mishra's 2013 conduct should not be admissible to prove Mr. Wheeler's guilt as to the conspiracy for which he has been charged.

### C. **The evidence recovered in 2013 is irrelevant to proving the 2011-2012 conspiracy**

Federal Rule of Evidence 801(d)(2)(E) is a codification of the common law prohibition against the admission in evidence of co-conspirator declarations made after a conspiracy has ended. This rule also applies to *acts* of co-conspirators, unless such acts are relevant to proving the initial conspiracy. *Logan v. United States*, 144 U.S. 263, 309 (1892), *abrogated* by *Witherspoon v. State of Illinois*, 88 S.Ct. 1770 (1968) on other grounds (stating that the act of one co-conspirator after the termination of the conspiracy was not admissible against his co-conspirators); *see also Gambino v. United States*, 108 F.2d 140, 144 (3d Cir. 1939) (citing *Brown v. United States*, 150 U.S. 93, 98 (1893) ("assum[ing] that the acts and declarations of one co-conspirator after the

8

completion or abandonment of a criminal enterprise constitute[s] proof against the defendant of the existence of the conspiracy…. [is] not a sound proposition of law.")); *Fiswick v. United States*, 329 U.S. 211, 217 (1946) (holding that even if a terminated conspiracy leads co-conspirators to undertake activities related to the initial conspiracy, "the conspiracy does not thereby become a continuing one" so as to make admissible acts of a conspirator against his co-conspirators).

The Supreme Court in *Lutwak v. United States,* 344 U.S. 604, 617-18 (1953), made a distinction between co-conspirator statements and acts. It held that the basis for an objection to the admission of a co-conspirator's declarations is that they are hearsay. *Id.* at 618. It concluded that "[t]his reason is not applicable to acts which are not intended to be a means of expression. The acts, <u>being relevant to prove the conspiracy</u>, [are] admissible, even though they might have occurred after the conspiracy ended." *Id.* (emphasis added).

*Lutwak*'s reasoning, however, applied in a case where post-conspiracy acts *concealed* the original conspiracy. *Id.* at 618. The logic goes as follows: if a co-conspirator commits acts of concealment, that is surely relevant to the existence of the initial conspiracy. Courts have applied *Lutwak* in cases where post-conspiracy conduct is relevant in proving a defendant's consciousness of guilt, motive for the initial conspiracy, or intent to engage in the initial conspiracy. *See, e.g., United States v. Green*, 594 F.2d 1227, 1229 (9th Cir. 1979) (holding that the admission of post-conspiracy conduct of the defendant lying to the FBI "[was] properly admitted in this case to show consciousness of guilt"); *Anderson v. United States*, 417 U.S. 211, 221-22 (1974) ("The prosecution was entitled to prove the underlying purpose and motive of the conspirators in order to convince the jury, beyond a reasonable doubt, that petitioners had in fact unlawfully conspired…"); *United States v. Clark*, 2012 WL 3009234 at **4, fn. 4 (3d Cir. 2012)

("[E]vidence is not irrelevant merely because it occurs after a conspiracy has ended, particularly when the evidence sheds light on a defendant's intent.").

The Government seeks to admit evidence seized during search warrants executed at the store owned and operated by Mr. Mishra (Rock America), as well as his residence at 1407 Middle Road. Co-mingling Mr. Wheeler's alleged activities with evidence seized from an investigation which occurred one year later would misrepresent the extent of Mr. Wheeler's role in the conspiracy. Therefore, the property recovered from Mr. Mishra in February 2013, <u>nearly one year after</u> Mr. Bush and Mr. Wheeler, were arrested should not be admitted against Mr. Wheeler. The evidence is unrelated to any charged conduct against Mr. Wheeler and falls outside of the charged conspiracy period. Furthermore, the government has not articulated how the admission of the evidence will demonstrate Mr. Wheeler's consciousness of guilt, motive, or intent with regard to the 2011-2012 conspiracy. There is nothing about the evidence seized that would shed light on the alleged conspiracy.

At the time of the search, the store at Rock America had been in continuous operation for years before the alleged conspiracy occurred, and continued in operation thereafter. *See* Gov't. Resp. to Def. Mishra's Second Amended Mot. to Suppress, Exh. A at 14 ¶ 25, *United States v. Bush*, No. 2:12-cr-00092-CB, ECF No. 195-1. Significantly, in the affidavit in support of the initial complaint against Mr. Mishra, the special agent investigating the case stated that "Mishra is a supplier of stamp bags and heroin cutting agents (such as Fentanyl and Morphine) to <u>numerous narcotics dealers</u> in the Pittsburgh area." Affidavit at 5, ¶ 13, *United States v. Mayank Mishra*, No. 2:13-mj-00165-MPK, ECF No. 2 (emphasis added). Another agent "described the surveillance of Mishra, which indicated that he was actively involved in selling drug paraphernalia to heroin traffickers before and after the Bush and Wheeler search warrants." Gov't. Resp. to Def. Mishra's

Second Amended Mot. to Suppress at 9, *United States v. Bush*, No. 2:12-cr-00092-CB, ECF No. 195.

In fact, even after he was arraigned and indicted for the conspiracy with Mr. Bush and Mr. Wheeler, "Mishra continued to distribute clandestinely stamp bags and items used to dilute heroin." *Ibid*., at 2. "The investigation revealed that Mishra supplied packaging materials and cutting agents to heroin dealers other than Bush. In fact, the Mishra family has long been the supplier of choice for heroin dealers in the Pittsburgh area for stamp bags and materials used to dilute heroin." *Id.*

The evidence found in this case demonstrates, at most, proof of Mr. Mishra and his family's illegal conduct. It does nothing to evince "a link between the [co-conspirators]," nor does it show "that one [co-conspirator] [was] facilitating the handiwork of the other." *United States v. Tyson*, 653 F.3d 192, 210 (3d Cir. 2011). The completely separate transactions of Mr. Mishra and his family implicate only their relationship with drug dealing, and are irrelevant to the existence of the charged conspiracy against Mr. Wheeler.

### D. <u>The introduction of the contraband recovered is highly prejudicial to Mr. Wheeler</u>

As the Third Circuit articulated in *United States v. Smith*, 294 F.3d 473, 479 (3d Cir. 2002), "if we find [post-conspiracy] acts to be relevant to a finding of a conspiracy, <u>and find no other reason for their exclusion</u>, then they should have been considered by the District Court." (emphasis added).

Federal Rule of Evidence 403 provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations upon due delay, waste of time, or needless presentation of cumulative evidence." Evidence, therefore, must be excluded if its unduly prejudicial impact

11

substantially outweighs its probative value. *United States v. Driggs*, 823 F.2d 52, 53 (3d Cir. 1987). Although the government may admit acts in a conspiracy which are not limited to the specific acts listed in the indictment, it is well settled that the government can only introduce those acts as long as there is no undue prejudice to the defendants. *United States v. Adam*, 534 F.2d 31, 39 (3d Cir. 1996). Therefore, the claim that a defendant is prejudiced by the introduction of testimony regarding bad acts committed by co-conspirators will be weighed under Rule 403. *United States v. Brady*, 26 F.3d 282, 287 (2d Cir. 1994).

The evidence seized at Mr. Mishra's property is highly prejudicial, and such prejudice substantially outweighs whatever probative value such evidence would otherwise have under Rule 403. Mr. Wheeler has not been charged with engaging in a continuing criminal enterprise. Therefore, evidence of the 2013 seizure of narcotics paraphernalia, cutting material and weapons from Mr. Mishra's home and business nearly one year after the arrest of Mr. Wheeler and Mr. Bush is neither probative nor relevant. The introduction of these exhibits will unnecessarily inject elements of offenses that are not otherwise part of this case. In addition, introducing evidence of uncharged contraband will mislead the jury and result in an "undue tendency ... suggest[ing] decision on an improper basis...." *See* Fed. R. Evid. 403 (Advisory Committee Note). Moreover, introducing such evidence would result in undue delay and a waste of time because it is lengthy and cumulative evidence and will open the door to exploring Mishra and his family's conduct, outside this conspiracy, that would provide the jury with alternate theories concerning the evidence seized from them.

### E. The evidence is irrelevant for a purpose other than proving Mr. Wheeler's character or disposition.

Courts in the Third Circuit will "refuse to admit evidence of prior criminal acts which has no purpose except to infer a propensity or disposition to commit crime." *United States v. Scarfo*,

850 F.2d 1015, 1019 (3d Cir. 1988); *Government of the Virgin Islands v. Toto*, 529 F.2d 278, 283 (3d Cir. 1976). To be admissible under Rule 404(b), evidence of uncharged crimes or wrongs must (1) have a proper evidentiary purpose; (2) be relevant; (3) satisfy Rule 403; and (4) be accompanied by a limiting instruction (where requested) about the purpose for which the jury may consider it. *United States v. Butch,* 256 F.3d 171, 175 (3d Cir.2001). These requirements have not been met.

The paraphernalia, cut, and weapons evidence are not relevant for a purpose other than proving Mr. Wheeler's bad character or disposition to commit other crimes. Based on the discovery provided by the Government, there was never an agreement among Mr. Wheeler, Mr. Bush, and Mr. Mishra to use such materials after Mr. Bush and Mr. Wheeler were arrested. Furthermore, no evidence has been presented that Mr. Wheeler or Mr. Bush took any steps to obtain or use the paraphernalia or weapons after their incarceration. To the extent that Mr. Mishra continued to sell or possess this material, it was for his own self-interest and not in furtherance of the charged conspiracy.

Put simply, the evidence serves no purpose "probative of a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). In order to be admitted, the evidence must fit "into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged." *United States v. Himelwright*, 42 F.2d 777, 782 (3d Cir. 1994). The paraphernalia may explain why Mr. Mishra and his family were under investigation for their association with multiple heroin dealers in 2013, but it does not shed light on the existence of the charged conspiracy nor Mr. Wheeler's possible membership in it.

Neither is the evidence admissible to prove Mr. Wheeler's "motive, opportunity, or intent," all valid purposes for admission. *See, e.g., Scarfo*, 850 F.2d at 1019-21. In this case, the fact that

13

evidence was recovered from Mr. Mishra's home and store does nothing to explain *Mr. Wheeler's* motives, intent, or opportunity with respect to a conspiracy which ended in 2012.

Although it is true that Rule 404(b) evidence may be probative when the charged offense involves a conspiracy, it must be evaluated under 403. *United States v. Cross*, 308 F.3d, 208 (3d Cir. 2002); *United States v. Sampson*, 980 F.2d 83 (3d Cir. 1992) (reversing conviction of defendant charged with conspiracy, where lower court failed to perform a 403 analysis on admission of prior drug convictions).

As discussed above, this evidence will simply invite the jury to assume that Mr. Wheeler intended to continue the conspiracy well after his arrest and to infer that Mr. Wheeler is the type of person who is predisposed to this type of conduct. Accordingly, Mr. Wheeler moves that all post-arrest evidence be excluded from admission at trial.

**4. Evidence of guns and ammunition neither charged against nor connected to Mr. Wheeler: BSW-49 through BSW-54AA, BSW-66 through BSW-83A, FBI-4, FBI-5, FBI-11, FBI-12, FBI-13, FBI-15, FBI-16, FBI-20, FBI-21, FBI-22, FBI-30, FBI-31, FBI-34 through FBI-42, FBI-45 through FBI-49, FBI-59, FBI-95, FBI-105 through FBI-109, PBP-7, RSW-3, RSW-3A, RSW-4, RSW-4A.**

These items are not charged against Mr. Wheeler, and nor can they be connected to him by use or by knowledge. Therefore, they are inadmissible against him under Rule 404(b) of the Federal Rules of Evidence. It is submitted that before the Court should allow the jury to hear evidence of guns and ammunition in addition to what is charged in the indictment, a particularized chain of proper influences under Rule 404(b) that does not implicate Mr. Wheeler's propensity to commit a crime or possess firearms is required as a prerequisite to balancing need versus fairness

14

under Rule 403.  See, e.g., *United States v. Brown*, 765 F.3d 278 (3d Cir.2014); *United States v. Caldwell*, 760 F.3d 267 (3d Cir. 2014) ("We have repeatedly emphasized that Rule 404(b) must be applied with careful precision, and that evidence of a defendant's prior bad acts is not to be admitted unless both the proponent and the District Court plainly identify a proper, non-propensity purpose for its admission"); *and see*, *United States v. Davis*, 726 F.3d 434 (3d Cir. 2013); *United States v. Smith*, 725 F.3d 340 (2013) (prior instance of drug distribution at the same location where the assault took place inadmissible in case charging defendant with assault on a federal officer: "under Rule 404(b) the proponent must set forth 'a chain of logical inferences, *no link of which* can be the inference that because the defendant committed ... offenses before, he therefore is more likely to have committed this one.") (*citing United States v. Sampson*, 980 F.2d 883 (3d Cir. 1992) (emphasis in original.)

Without some actual connection between this evidence and Mr. Wheeler, the evidence can serve no legitimate purpose.  There will be no evidence permitting the jury to find that the guns were in furtherance of the particular conspiracy charged between Mr. Bush and Mr. Wheeler.  The number of guns and ammunition, and the nature of the sawed-off shotgun, will necessarily inflame the jury's prejudices against Mr. Bush.  The mantra of "guns and drugs go together" cannot serve to admit such highly prejudicial evidence without further analysis pertaining to the particular case, adequate findings under Rule 403, and, if admitted, appropriate cautionary instructions.  In considering such instruction, it is submitted that the Court cannot articulate a fair and proper purpose for which the jury may consider the firearms and ammunition.  And the very difficult task of drafting such an instruction is a clear indication that the evidence should not be admitted.

15

**5. Intercepted telephone calls: FBI-335 and FBI-335A, FBI-358 and FBI-358-A, FBI-460 and FBI-460A, and FBI-461and FBI-461A.** These intercepted conversations are not admissible under Rule 801(d)(2)(E) of the Federal Rules of Evidence. That Rule requires, before it can be admitted in evidence, that the statement be made by a co-conspirator of Mr. Wheeler, and that it be made during and in furtherance of the conspiracy. While all of these calls involved Mr. Bush, who was charged in this conspiracy, the statements contained within these calls were not made in furtherance of the conspiracy. Additionally, they are not admissible under Fed. R. Evid. 403 because they are unduly prejudicial and confuse the issues in this case.

The relevance of FBI-335 is particularly difficult to understand. *See* Exhibit C (FBI-335A, transcript of FBI-335). The conversation could involve a personal matter and may be interpreted as possibly encouraging violence, which would be unduly prejudicial. On the other hand, it might be about some collateral matter that would unnecessarily prolong the trial in this case. In any event, it does not appear to further the charged conspiracy and is, therefore, inadmissible. It is further inadmissible under Rule 403.

Bush's conversation set forth in FBI-358 was not made in furtherance of the charged conspiracy. *See* Exhibit D (FBI-358A, transcript of FBI-358). Instead, it is full of stories meant to impress the female caller. Mr. Bush simply boasts about extravagant items a friend of his bought. Of course, Mr. Bush's stories are classic hearsay and were not meant to further the conspiracy. These uncorroborated stories are also prejudicial and collateral to the charged offense; thus, the call is inadmissible under Rule 403.

FBI-460 is a call in which an agitated Mr. Bush argues with a woman and claims to have just put a gun to someone's head. *See* Exhibit E (FBI-460A, transcript of FBI-460). Soon the call devolves into ranting about the woman on the phone and saying particularly vile things while the

16

woman asks him why he beats her. Bush's statement to this woman were not made in furtherance of the charged conspiracy. Moreover, they are extremely prejudicial and would prejudice Mr. Wheeler simply through association with Mr. Bush.

Finally, FBI-461 is a call in which a woman asks Mr. Bush if he needs gun locks because she knows somebody who is selling them. Mr. Bush declines the offer and generally discusses why a gun lock would be pointless for him. *See* Exhibit F (FBI-461A, transcript of FBI-461). Mr. Bush also insinuates that at the moment he has a gun in his pocket. These statements were made for the purpose of declining to buy a gun lock; they were not made in furtherance of the conspiracy. Thus, this call is inadmissible under Rule 801(d)(2)(E). Also, as he admits to having guns and wanting them at the ready, it is highly prejudicial evidence that is inadmissible under Rule 403.

**6. Wiretap transcripts; FBI-325A through FBI-437A, inclusive; and FBA-460A through FBI-466A, inclusive:** The transcripts of recordings are not evidence, it is the recordings themselves that are the evidence. *See* Third Circuit Model Criminal Jury Instructions § 4.06.

**7. Telephone texts: FBI-438 through FBI-459 inclusive.** These documents are not merely data about the call and the content of the messages. These include law enforcement opinion about who is participating in the texting and other information outside of the text itself in the synopsis portion of the report. *See*, *e.g.*, Exhibit G (FBI-447, which includes a statement about pole camera observations and an opinion about how it relates to the text message). Only the telephone numbers involved and the "text of the texts" along with any time and date data from the phone(s) are admissible as evidence.

**8. Indicia: BSW-60, BSW-60A, FBI-17, FBI-18, FBI-51. FBI-171, FBI-172, FBI-173; FBI-320, FBI-321, FBI-481, FBI-482, FBI-483; HSW-1, WSW-2, WSW-2A:** Mr. Wheeler has no objection to stipulating that he lived at the 5th Avenue residence, that the Honda automobile was his, and that Mr. Bush lived at the Madonna Street residence. Therefore the "indicia" evidence is irrelevant, and some of it is prejudicial even if indicia were relevant. For instance, a wiretap application belonging to a different case is hearsay evidence of other offenses, which is not admissible under Rule 404(b), and in any event the application is presumably sealed and cannot on that account be offered in evidence at a public trial. In addition, some of the indicia includes correspondence from the ACJ, which is also unduly prejudicial and would result in unnecessary delay. Thus, such evidence is inadmissible under Rule 403.

Given the fact that Mr. Wheeler is not contesting residency for any of the places for which indicia is being introduced and that he is not contesting the identity of individuals depicted in the photographs contained in these exhibits, or law enforcement's identity of these individuals, admitting this evidence would unnecessarily delay the trial.

**9. Miscellaneous: FBI-9.** The identifying card of the photographer can have no potential relevant purpose and will therefore be confusing and unnecessary. It should therefore be excluded under Rules 402 and 403 of the Federal Rules of Evidence.

**Miscellaneous: ACP-1, ATF-1, FBI-320, FBI-321.** This evidence is personal information, including a criminal conviction and Pennsylvania Justice Network data, concerning Richard Bush, and has no relevance to a conspiracy allegedly involving Willis Wheeler.

**10. Missing from discovery materials: DEA-21, FBI-484, FBI-485, FBI-486.** This evidence cannot be found among any of the materials supplied by the government to undersigned counsel or what was retrieved from Mr. Zimmerman.

Wherefore, for the foregoing reasons, Willis Wheeler respectfully moves this Honorable Court to exclude the evidence objected to above.

Respectfully submitted,

s/ Linda E.J. Cohn
Linda E.J. Cohn, Assistant
Federal Public Defender

s/ W. Penn Hackney
W. Penn Hackney, Assistant
Federal Public Defender
Pa. Attorney ID No. 29671